UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAVIER EDUARDO MARQUEZ RUJANO,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT et al,<br><br>Respondents. | CASE NO. 2:26-cv-00325-TL<br><br>ORDER ON PETITION FOR WRIT OF HABEAS CORPUS |

This matter is before the Court on Petitioner Javier Eduardo Marquez Rujano's Petition for Writ of Habeas Corpus ("habeas petition"). Dkt. No. 3. Respondents are United States Immigration and Customs Enforcement ("ICE"); Bruce Scott, Warden and Northwest ICE Processing Center ("NWIPC"). Having considered the habeas petition, Respondent's return (Dkt.

//

//

//

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 1

No. 6),[1] Petitioner's traverse (Dkt. No. 12), Respondent's response to Petitioner's traverse (Dkt. No. 15),[2] and the relevant record, the Court GRANTS the petition and ORDERS Petitioner's release.

## I.    BACKGROUND

On or about November 25, 2023, Petitioner, a native of Venezuela, was detained after entering the United States from Mexico at or near Eagle Pass, Texas without first being admitted or paroled by an Immigration Officer. Dkt. No. 7 ¶¶ 3–4 (Bolof Decl.). On November 26, 2023, an agent with the Department of Homeland Security ("DHS") served Petitioner with a Notice to Appear ("NTA"), charging him with being "an alien present in the United States who has not been admitted or paroled." Dkt. No. 8-1 (NTA) at 2. Following his arrest and placement in removal proceedings, Petitioner was released on an Order of Release on Recognizance ("OREC") subject to reporting and other conditions for his continued release. Dkt. No. 8-3 (OREC). The OREC stated that Petitioner was being released "[i]n accordance with section 236 of the Immigration and Nationality Act[.]" *Id.* On February 7, 2024, the NTA was filed with the Executive Office for Immigration Review, marking the initiation of removal proceedings against Petitioner. Dkt. No. 7 ¶ 6. On November 18, 2024, Petitioner filed an application for asylum and withholding of removal. *Id*. ¶ 7.

Petitioner was arrested by immigration officers in Portland, Oregon on December 2, 2025, and booked into NWIPC the same day. *Id.* ¶ 8. On January 21, 2026, DHS filed a motion to pretermit Petitioner's applications for immigration relief  because he is subject to the Asylum Cooperative Agreement with Ecuador. *Id.* ¶ 9. An immigration judge granted DHS's motion on

---

[1] As used in this order, the term "Respondent" refers to United States ICE. Respondent Scott has not responded to the habeas petition and has not appeared in this case.

[2] After Respondent filed a response to his petition, Petitioner retained counsel and filed a traverse with assistance of counsel that raised new issues. *See* Dkt. No. 14. Therefore, the Court allowed one additional round of briefing in response to Petitioner's traverse. *Id.*

February 12, 2026, and ordered Petitioner removed to Ecuador. *Id.* ¶ 10. On March 5, 2026, Petitioner filed a Notice of Appeal with the Board of Immigration Appeals regarding the Immigration Court's decision to remove petitioner. Dkt. No. 13 ¶ 4.

Petitioner filed the instant petition on February 17, 2026, seeking a writ of habeas corpus under 28 U.S.C. § 2241. Dkt. No. 3. He alleges, through counsel, that his arrest and re-detention violate the Due Process Clause of the Fifth Amendment to the United States Constitution. Dkt. No. 3 ¶ 3; Dkt. No. 12.

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

## III.    DISCUSSION

Petitioner argues that he is held pursuant to 8 U.S.C. § 1226(a) and that his arrest and re-detention without notice and an opportunity to be heard violates the Due Process Clause of the Fifth Amendment to the United States Constitution. Dkt. No. 3 ¶ 3; Dkt. No. 12 at 2–5. Respondent asserts that Petitioner's detention is lawful and mandatory pursuant to 8 U.S.C. § 1225(b) and that Petitioner's detention is mandatory and lawful. Dkt. No. 6 at 15–16.

The Due Process Clause prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 3

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also P.T. v. Hermosillo,* No. C25-2249, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("In determining the lawfulness of Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained.")).

In *Mathews*, the Supreme Court established a three-part balancing test determining whether an administrative procedure provides the process constitutionally due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that the *Mathews* test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). District courts in this Circuit have applied the *Mathews* test in similar circumstances since then. *See, e.g.*, *Torres v. Hermosillo*, No. C25-2687, 2026 WL 145715, at *6 (W.D. Wash. Jan. 20, 2026); *Sira-Hurtado v. Hermosillo*, No. C25-2173, 2025 WL 3294986, at *2 (W.D. Wash. Nov. 26, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025)

Respondent acknowledges the *Mathews* analysis (*see* Dkt. No. 6 at 16) and that some courts in this District have concluded that revocation of OREC may require a pre-deprivation hearing (*id.* at 17). Consistent with persuasive authority, the Court will evaluate Petitioner's

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 4

claims under *Mathews*, considering each factor in turn to determine whether Petitioner's re-detention comports with constitutional due process requirements, after first dispensing with Respondent's argument that Petitioner is subject to mandatory detention.

**A.      The Record Indicates Petitioner Is Not Subject to Mandatory Detention Under § 1225**

As a preliminary matter, Respondent argues that Petitioner is subject to mandatory detention under §1225(b) and that Petitioner fails to recognize that he is "an arriving alien" subject to mandatory detention during the pendency of removal proceedings. Dkt. No. 15 at 2; Dkt. No. 6 at 15–16.

Respondent's own documents which it submits to the Court contradicts its position that Petitioner is subject to mandatory detention as an arriving alien. The record Respondent puts before the Court clearly shows that Respondent has considered Petitioner to be detainable only under § 1226, not § 1225, since at least November 2023, when DHS issued an "Order of Release on Recognizance" informing Petitioner that he was being subjected to terms of conditional release "[i]n accordance with section 236 of the Immigration and Nationality Act"—that is, 8 U.S.C. § 1226. Dkt. No. 8-3 at 2. *See also Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115–16 (9th Cir. 2007) (holding that a non-citizen released on an "Order of Release on Recognizance" necessarily must have been detained and released under § 1226, including because he was not an "arriving alien" under the regulations governing § 1225 examinations). Further, the DHS Notice to appear provided an option for its agent to classify Petitioner as "an arriving alien," but the agent declined, instead marking Petitioner as an "alien present in the United States who has not been admitted or paroled." Dkt. No. 8-1 at 2. These are critical distinctions, because the only statutory exception to detention under § 1225 is parole under 8 U.S.C. § 1182(d)(5)(A). In other words, if Petitioner was truly subject to mandatory detention

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 5

under § 1225, Respondent could never have released him under § 1226. In any event, these were determinations made by Respondent's own agent, and Respondent does not indicate that it erred in releasing Petitioner under 8 U.S.C. § 1226. The Court will not accept Respondent's arguments that Petitioner is not subject to § 1226 when its own records demonstrate that he is. Taking the determinations of Respondent's agents at face value, the Court finds Petitioner is not detained under § 1225 and, therefore, is not subject to mandatory detention.[3]

**B.     The *Mathews* Factors Weigh in Petitioner's Favor**

The Court will now turn to the *Mathews* factors.

**1.        Petitioner Has a Considerable Private Interest in His Liberty**

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas*, 533 U.S. at 696 (a noncitizen has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention). The Ninth Circuit has found that "a detained person's liberty interest is substantial." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1199 (9th Cir. 2022). Petitioner, unquestionably, has a strong interest in his own liberty. When Petitioner was released on his own recognizance, he acquired a liberty interest—one that he relied on for while living in the community for over two years—and that interest entitles him to Due Process, which Respondent has failed to give. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional,

---

[3] In any event, "the fact 'that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.'" *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) (citation modified).

have a liberty interest in their continued liberty."). Therefore, the first *Mathews* factor weighs in Petitioner's favor.

### 2. The Risk of Erroneous Deprivation of Liberty is High

In the present case, Respondent's agent determined that Petitioner could be released on his own recognizance. Dkt. No. 8-3 at 2. There is nothing in the record demonstrating that Petitioner was provided advanced notice of his re-detention or the factual basis for it. Accordingly, the Court finds that the risk of erroneous deprivation of liberty is high. *See Doe*, 787 F. Supp. 3d at 1094 ("[G]iven that Petitioner was previously found to not be a danger or risk of flight . . . the risk of erroneous deprivation remains high."). As other courts in this Circuit have found, a post-deprivation bond hearing under these circumstances "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d. 1316, 1324 (W.D. Wash. 2025) (citing *Domingo v. Kaiser*, No. C25-5893, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.")). Therefore, the second *Mathews* factor weighs in Petitioner's favor.

### 3. Respondent's Interest in Re-Detention Without Hearing Is Minimal

Respondent has not articulated any specific reason for re-detaining Petitioner without a hearing. Respondent argues that there is no categorical rule requiring a pre-deprivation hearing in every case involving revocation of an OREC and the inquiry is "necessarily fact-specific and governed by the balancing analysis mandated by *Mathews*." Dkt. No. 6 at 17. Respondent then asserts that "the circumstances presented in this case did not necessitate a pre-detention hearing."

*Id.* (citing generally to Bolof Decl.). The generic reference to a boilerplate, nondescript declaration without any further explanation does not justify re-detention without a hearing.

While the Court acknowledges that providing Petitioner with a hearing before re-detaining him would require some expense of money and time, those costs are outweighed by the risk of erroneous deprivation of the liberty interest at stake. *See*, *e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Therefore, the Court finds that the third *Mathews* factor weighs in favor of Petitioner.

### IV.   CONCLUSION

For the foregoing reasons, the Court finds that Petitioner is in custody in violation of the Constitution of the United States and ORDERS as follows: [4]

(1)   The Petition for a Writ of Habeas Corpus (Dkt. No. 3) is GRANTED.

(2)   Respondent shall release Petitioner from detention by 5 p.m. on March 19, 2026, pursuant to the conditions in his preexisting Order of Release on Recognizance;

(3)   Within 48 hours of this Order, Respondent shall provide the Court with a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

Dated this 18th day of March, 2026.

Tana Lin
United States District Judge

---

[4] Given the Court's ruling, it need not reach the other two grounds raised in the petition regarding medical care and whether there were grounds to arrest him under the Fourth Amendment. Dkt. No. 3 at 10. The Court notes that, in any event, Petitioner did not respond in his traverse to the Respondent's arguments on these grounds. *See generally* Dkt. No. 12.